(No. 22557.—

FRANK MINNIS, Appellee, *vs.* ARNOLD H. FRIEND *et al.* Appellants.

*Opinion filed April 12, 1935—Rehearing denied June 5, 1935.*

SHAW, J., dissenting.

ANSON H. BROWN, and CHARLES E. GREEN, for appellant Arnold H. Friend; WILLIAM H. SEXTON, Corporation Counsel, and A. M. SMIETANKA, City Attorney, (QUIN O'BRIEN, and FRANK H. NOVAK, of counsel,) for appellant the city of Chicago.

JOSEPH D. RYAN, and EDMUND M. SINNOTT, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The appellee, Frank Minnis, recovered a judgment for $15,000 in the circuit court of Cook county against the appellants, Arnold H. Friend and the city of Chicago. The appellee's cause of action was based upon injuries he received when a city fire truck collided with Friend's automobile on July 16, 1932, shortly before 9:00 o'clock in the morning, at Wells and Monroe streets, in Chicago. The case was tried before a jury, which returned a verdict on December 22, 1932. Motions were made at the close of appellee's evidence and at the close of all the evidence to direct a verdict for the appellants. These motions, and those for a new trial and for a judgment *non obstante veredicto,* were overruled and judgment was entered on February 24, 1934. The appeal was brought directly to this court because the constitutionality of "An act in relation to the liability for injuries, caused by the operation of motor vehicles by members of municipal fire departments

while engaged in the performance of their duties," approved July 7, 1931, (Cahill's Stat. 1933, p. 593; Smith's Stat. 1933, p. 1594;) is challenged by the city of Chicago. The appeal is governed by the Civil Practice act.

The city of Chicago also urges that the notice required by section 2 of "An act concerning suits at law for personal injuries and against cities, villages and towns," (Cahill's Stat. 1933, p. 1570; Smith's Stat. 1933, p. 1594;) was fatally defective because it was not signed as therein required. Both appellants contend that the verdict and judgment are contrary to the law and the evidence, that the verdict is the result of passion and prejudice and the amount of the damages is excessive, and that the court erred in instructing the jury.

The language of the statute relating to suits for injuries against cities determines whether the notice given to the city is defective. It is provided in section 2: "Any person who is about to bring any action or suit at law in any court against any incorporated city, village or town for damages on account of any personal injury shall, within six months from the date of injury, or when the cause of action accrued, either by himself, agent or attorney, file in the office of the city attorney (if there is a city attorney, and also in the office of the city clerk) a statement in writing, *signed by such person, his agent or attorney,* giving the name of the person to whom such cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where such accident occurred, and the name and address of the attending physician (if any)." Section 3 provides: "If the notice provided for by section 2 of this act shall not be filed as provided in said section 2, then any such suit brought against any such city shall be dismissed and the person to whom any such cause of action accrued for any personal injury shall be forever barred from further suing."

The notice which was given to the city was not signed by anyone. The objection was that the statute required it to be signed. The objection was overruled and the notice was received in evidence.

The act in question is a valid enactment, and the filing of the statement or notice required by section 2 is a condition precedent to the right to maintain the suit. (*Walters* v. *City of Ottawa*, 240 Ill. 259, 263; *Condon* v. *City of Chicago*, 249 id. 596.) In *Ouimette* v. *City of Chicago*, 242 Ill. 501, the notice stated that the accident occurred on November 10, 1905, instead of October 10, 1905, when the accident had occurred. In holding that notice insufficient we said: "The question of this notice is entirely within legislative control. The legislature may prescribe the conditions under which cities shall be held liable to persons injured while using streets and sidewalks. (*Walters* v. *City of Ottawa, supra; Curry* v. *City of Buffalo*, 135 N. Y. 366.) It has prescribed in this statute that the notice shall give the date of the accident. From the reasoning in the two cases already cited, heretofore decided by this court, it must be held that the wrong date in the notice is, in effect, the same as if no date at all were given. The statute requires the date to be set out in the notice, and this certainly cannot be done by stating that the accident occurred on a date on which it did not occur.—*Gardner* v. *New London*, 63 Conn. 267," and other cases.

Appellee relies upon the case of *McComb* v. *City of Chicago*, 263 Ill. 510. There we held a notice gave a sufficient description of the place or location of the accident when it stated that it occurred "at or near the corner of Thirty-ninth street and Campbell avenue." It was objected that it did not state specifically the corner at which the accident occurred. We said that the purpose of the statute was to enable the city authorities, by the exercise of reasonable intelligence and diligence, to locate the place of the injury and ascertain the conditions alleged to have

existed which caused the injury, and that no particular form of notice is required by the statute. What we said necessarily had reference only to the facts of that case. There had been an attempt to comply with the statute, and our holding was that location had been given which was sufficiently definite to comply with the statute. The *McComb case* would be applicable if there had been some attempt to comply with the requirement of the statute that the notice be signed and if the question were as to the sufficiency of the signature. No reason appears to us why the plain terms of the statute should not be followed. It requires not only that the notice be given but that it be "signed by such person, his agent or attorney," and provides that if the notice "shall not be filed as provided in said section 2, then any such suit brought against any such city shall be dismissed," etc. Since the legislature has made the giving of this statutory notice a condition precedent to liability, a notice which does not contain one of the essentials prescribed therein is not a compliance with the statute. The notice should not have been admitted in evidence and the motion to direct a verdict for the city of Chicago at the close of the plaintiff's evidence should have been allowed. The judgment must therefore be reversed as to the city of Chicago. The constitutional question raised and the other assignments of error made by the city of Chicago need not be considered. *City of Chicago* v. *Brent,* 356 Ill. 40.

Appellee was injured as a result of a daytime collision between the vehicles of the two appellants. He was on the sidewalk near the northwest corner of the intersection of Wells and Monroe streets, in the loop district in Chicago. No claim is made that he was guilty of contributory negligence. The fire truck came north on Wells street and collided with Friend's automobile, which he was driving west on Monroe street. The truck driver, Joseph Jeffries, swerved to his left, and after the collision the truck got

out of his control. It ran up onto the sidewalk on the west side of Wells street, north of Monroe street, struck the appellee, and was finally stopped by a fire hydrant. Jeffries testified that an alarm was turned in at the fire engine house at 214 Lomax place at about 8:40 on the morning of the collision. He turned on the siren when he left the engine house. This siren was operated by the fly-wheel and it sounded continuously until after the accident. He drove the truck north on Wells street. When the driver saw Friend's automobile coming into Wells street he swung his truck to his left to avoid Friend's car but it struck the truck on its right side near the door. Jeffries was thrown against the wind-shield of the truck, lost control of it, and it ran up onto the sidewalk and was stopped by the hydrant, as already described. He testified that as he approached Monroe street the traffic light at the street intersection changed from red to yellow.

E. T. Sabin, another witness for appellee, testified that he heard a siren making an "awful racket" when he was walking north on Wells street and was about one hundred feet south of Monroe street. He stepped to the curb to learn from whence this sound came. He noticed a sedan on Monroe street and saw someone waiving his arms and attempting to stop that automobile. He said the driver of this sedan hesitated and then proceeded into the street intersection. In his opinion the fire truck was moving at from thirty-five to forty miles an hour and the sedan at from seven to ten miles an hour when the driver hesitated and at fifteen miles an hour or more after Friend increased the speed of his car. This witness could hear the noise of the siren above the noise of the surface traffic and the elevated trains which run above Wells street.

Peter Klatt testified as a witness for appellee. He was at the northeast corner of the street intersection when he heard the siren on the fire truck. Friend's automobile was then thirty to forty feet east of the street intersection. In

his opinion the sedan was traveling at a speed of eighteen to twenty-two miles an hour. The yellow light went on and the sedan jerked forward when it was about even with the curb.

Another witness for the appellee, Frank John, had been a chauffeur for fifteen years prior to the day of the collision. This man was standing on the northeast corner of the street intersection, waiting for a west-bound street car. He heard the siren blowing and saw the fire truck coming north when it was a block south of Monroe street. He also saw the automobile of Friend when it was approximately eighty feet east of Wells street. He walked east and tried to stop Friend by waving his arms and making signals to Friend. His efforts were without avail. Friend drove past him and into the street intersection. In his opinion Friend's automobile was being driven at a speed of from twenty to twenty-five miles an hour.

The appellant Friend testified that he did not see the fire truck until he got into the intersection, and that when he came up to Wells street the traffic light was green, indicating that he could proceed west on Monroe street. He said the fire truck was going north and was in the east street car track on Wells street. It was traveling at from thirty-five to forty miles an hour. He gave the speed of his own automobile at from ten to twelve miles an hour and said that all the windows of his sedan were open. He stated his automobile was in excellent mechanical condition and that he could have stopped it within from five to eight feet. He swerved to the right to avoid the fire truck.

Other witnesses for the appellant Friend testified that his automobile was moving at from seven to twenty miles an hour; that the fire truck was moving at from thirty-five to fifty miles an hour, and that the traffic light was red against the fire truck.

In passing upon a motion to direct a verdict the trial court is limited to determining whether there is or is not

any evidence which tends to prove the facts alleged. When a jury is not waived the trial court has no power to determine the weight and preponderance of conflicting evidence introduced to establish or to disprove these facts, and the court is never authorized to take a case from the jury where to do so would involve the determination of the preponderance of the testimony. (*Kinsey* v. *Zimmerman*, 329 Ill. 75, 79.) In this record there is evidence of negligence on the part of the appellant Friend, and the trial court did not err in overruling his motion to direct a verdict either at the close of the appellee's evidence or at the close of all the evidence. The most that can be said is that there is some conflicting testimony. The question was one of fact, to be determined by the jury. *Peters* v. *Chicago Railways Co.* 307 Ill. 202.

The contention is made that it was error to permit the appellee to display his injured leg to the jury when, as here, there was no dispute as to the fact and nature of the injury. It is claimed that the purpose of such an exhibition was to excite feelings of sympathy and passion rather than to enlighten the jury. The question whether injuries to the person shall be shown to the jury rests within the sound discretion of the trial court. When the question is as to the extent of the wound or injury it is the common and correct practice to exhibit the wound or injury to the jury so that they may see for themselves. (*Walsh* v. *Chicago Railways Co.* 303 Ill. 339, 346.) In arriving at an amount to be paid as damages, if damages were to be allowed, the jury would have to determine the nature and extent of the appellee's injuries even though the fact and nature of the injury were conceded. The trial court did not commit error when it permitted the appellee to display his injuries to the jury.

In his motion for a new trial appellant Friend complained that his instructions numbered 25, 26, 27 and 31 were refused. Counsel now argue that the trial court erred

in refusing many other instructions not mentioned in the motion for a new trial. Such other instructions need not be considered. *People* v. *Vickers,* 326 Ill. 290; *Erikson* v. *Ward,* 266 id. 259.

With reference to Friend's 25th instruction, it omits any reference to negligence of the city of Chicago, but since we have held that there was no cause of action against the city, we prefer to sustain the trial court's refusal of the instruction on the better ground that all it contains was included in this appellant's 17th and 19th given instructions.

Friend's 26th instruction was properly refused. It is misleading, confusing and incomplete, in that it does not say what Friend had to "perform." It also has the vice of assuming that if a fire engine came up the street this would be something unusual, against which Friend did not have to take care until the moment he was aware of ·its presence. This sort of instruction was held bad with reference to a motor cycle in *Swanlund* v. *Rockford and Interurban Railway Co.* 305 Ill. 339. The instruction is copied imperfectly from the instruction discussed in *Chicago Union Traction Co.* v. *Browdy,* 206 Ill. 615, but the facts here are so different that the *Browdy case* is inapplicable.

With reference to Friend's 27th instruction he relies upon the instruction discussed in *Chicago Union Traction Co.* v. *Mee,* 218 Ill. 9, and contends that it was prejudicial error to refuse the instruction here. Appellee points out that in that case no instruction was given telling the jury that the burden of proof was on the plaintiff. This was done by Friend's 19th instruction which was given. The instruction in the *Mee case* did not contain the latter part of the refused instruction, which is: "No presumption that the defendant Arnold Friend was negligent arises from the fact that the accident happened." Similar language to this was condemned in *West Chicago Street Railroad Co.* v. *Petters,* 196 Ill. 298, where we held that instructions which select one item of evidence or one fact disclosed and state

that a certain conclusion does not follow therefrom as a matter of law are calculated to confuse and mislead a jury. (*Drainage Commissioners* v. *Illinois Central Railroad Co.* 158 Ill. 353.) If such instructions were to be held proper, a defendant could select each separate fact constituting the entire chain of evidence by which negligence was proved, and thus instruct the jury, through the court, that each link in the chain did not, standing alone, constitute negligence. While the separate links standing alone as "mere facts" might not constitute negligence, the whole, taken together, would. Thus the consideration of these separate facts would be taken from the jury and its province would be invaded. (*West Chicago Street Railway Co.* v. *Petters*, 196 Ill. 298, 300.) In addition, every material part of this refused instruction is covered by Friend's given instructions 19 and 21, and there was, therefore, no error in refusing his 27th instruction.

In addition to being unnecessary, the 31st instruction asked by Friend is almost an exact duplicate of his 18th given instruction. Nothing more need be said with reference to the refusal of this instruction.

Complaint is made of the 40th instruction given on behalf of the city of Chicago. It is in the language of paragraph 4 of section 33 of the Motor Vehicle act, (Cahill's Stat. 1933, p. 1893; Smith's Stat. 1933, p. 2515;) which gives the right of way "in all cases" to fire department vehicles. Instructing the jury in the words of the law itself should not be pronounced error. *Deming* v. *City of Chicago*, 321 Ill. 341, 345.

In answer to the complaint as to the city of Chicago's given instruction 41, it is sufficient to say that no complaint is made by appellant Friend that this instruction did not correctly state the substance of the city ordinance which required Friend to draw to the curb and wait until the fire engine passed, and what we have just said with reference to the city's given instruction 40 is applicable here. In

*Kellyville Coal Co.* v. *Strine,* 217 Ill. 516, we held plaintiff is not bound to anticipate every possible defense in framing his instructions. No instruction need state all the law in a case, and it is sufficient if, taken as a series, the instructions correctly advise the jury as to the law applicable to the case. We have carefully considered the instructions given and they accomplish that result.

In connection with the claim that the $15,000 judgment is excessive, it is not necessary to set out all the injuries. It is sufficient to say that in spite of the fact that Minnis testified, when he asked leave to sue as a poor person, that for eleven months prior to his injuries he had earned but $200, the evidence shows that before his injury he was in good health and but thirty-three years of age. His right leg was broken in many places, almost severed at the knee, and was joined to the upper portion by one-third of the muscles, tendons and skin. One break was into the knee joint and both bones of the lower leg were badly shattered. Osteomyelitis made subsequent operations necessary to remove diseased bone. Hospital and physicians' bills, each for more than $1300, were incurred. His right knee is ninety-nine per cent immovable and his right foot is rotated inward. He was hurt on July 16, 1932, and when the trial was had, in December, 1933, the sinuses on his tibia were still discharging pus. These damages are not excessive.

Counsel for Minnis contend that although heretofore we have held that tort judgments against more than one defendant are not divisible and that a reversal as to one such defendant works a reversal as to all, (*Livak* v. *Chicago and Erie Railroad Co.* 299 Ill. 218,) paragraph (*f*) of section 92 of the Civil Practice act permits a reviewing court to reverse a judgment as to one and to affirm as to another defendant. The act provides:

"Sec. 92. In all appeals the reviewing court may, in its discretion, and on such terms as it deems just,— * * *

"(f) Give any judgment and make any order which ought to have been given or made, and make such other and further orders and grant such relief, including a remandment, a partial reversal, the order of a partial new trial, the entry of a *remittitur,* or the issuance of execution, as the case may require."

Counsel for appellant Friend contend that this paragraph is a mere re-enactment of sections 110 and 111 of the Practice act of 1907. The language relied upon is:

"Sec. 110. In all cases of appeal and writ of error, the Supreme Court or Appellate Court may give final judgment and issue execution, or remand the cause to the inferior court, in order that an execution may be there issued or that other proceedings may be had thereon. * * *

"Sec. 111. The Supreme Court or Appellate Court, in case of a partial reversal, shall give such judgment or decree as the inferior court ought to have given, and for this purpose may allow the entering of a *remittitur,* either in term time or in vacation, or remand the cause to the inferior court for further proceedings, as the case may require."

Paragraph (f) of section 92 of the Civil Practice act is broader than sections 110 and 111 of the Practice act of 1907. But appellee contends that even under the earlier act courts of review had power, had they seen fit to do so, to sustain a judgment as to one tort feasor and reverse it as to others. What was said in the decision in *Livak* v. *Chicago and Erie Railroad Co.* 299 Ill. 218, 226, in discussing section 111 of the 1907 act, tends to sustain this contention, and is: "Many other courts of this country have held under statutes somewhat similar to the statutes referred to, that such a procedure as is contended for by plaintiff in error is proper and more in harmony with justice and economy in the disposition of lawsuits, and particularly in that class of cases where the evidence shows a complete right of recovery against one defendant and no

right of recovery whatever against the other defendants, and such practice is employed very often in tort actions and sometimes in actions *ex contractu*. This court has held for about seventy years, beginning with *McDonald* v. *Wilkie*, 13 Ill. 22, that a judgment against several defendants, whether rendered in an action for tort or on a contract, is a unit and cannot be reversed as to one or more defendants and affirmed as to the others. [Citing cases.] Numerous other decisions of this court are to the same effect, but while there is much good reason, as well as economy, in adopting the new procedure followed by many of the courts of this country, the majority of the members of this court adhere to the common law rule that a judgment is a unit and must stand against all the defendants or fail as to all, as the rule has so long been in vogue in this jurisdiction."

The law is, and has for a long time been well settled in this State, that in an action of tort the plaintiff may sue as many defendants as he chooses and have judgment against those, only, who are proved guilty, (*Humason* v. *Michigan Central Railroad Co.* 259 Ill. 462, 470,) and even after verdict, in such an action, where a joint liability has been found to exist, it is not error for the trial court to enter judgment against one defendant, alone. (*Postal Telegraph-Cable Co.* v. *Likes,* 225 Ill. 249.) Under such circumstances plaintiff may dismiss his suit as to some defendants and take judgment as to those remaining. *Illinois Central Railroad Co.* v. *Foulks,* 191 Ill. 57; *Humason* v. *Michigan Central Railroad Co.* 259 id. 462, 470.

There is no substantial reason to impel us to adhere to the common law rule that a judgment is a unit where it is clear that no right of action existed, as a matter of law, against one defendant, the city of Chicago, but a cause of action is proved against the other defendant, Friend. In addition, section 4 of the Civil Practice act provides that the act shall be liberally construed, to the end that

controversies may be speedily and finally determined according to the substantive rights of the parties. Nor is there any merit in the contention of the appellant Friend that individual defendants might be permitted to pay a plaintiff and induce plaintiff to confess error as to them, nor in the contention that if a new trial were had a smaller verdict might be returned against Friend if the city, with its immense taxing power, were removed from the case. In support of this last contention counsel for Friend rely upon *Washington Gas Light Co.* v. *Lansden,* 172 U. S. 534. That was a libel suit involving a showing of the financial ability of the corporation impleaded with certain of its officers as defendants. In reversing the judgment against the gas company it was properly held that a new trial should be allowed as to the remaining defendants, for the reason that this evidence as to the corporation's financial condition had been improperly admitted and tended to prejudice the individual defendants. No such testimony was given in this case. Such an injustice will not result to the defendant Friend if the judgment be affirmed as to him. We hold that under the Civil Practice act the judgment is not a unit but is divisible.

After careful consideration we conclude that for the reasons stated there was no cause of action shown against the city of Chicago, but that as to the appellant Friend the judgment of the circuit court of Cook county should be affirmed. The judgment is therefore reversed as to the city of Chicago and affirmed as to the appellant Friend.

> *Judgment reversed as to city of Chicago.*
> *Judgment affirmed as to Arnold H. Friend.*

Mr. JUSTICE SHAW, dissenting: In my opinion this cause should be remanded for a new trial as to appellant Friend.